IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH FACEBOOK USER ID 1527195497 THAT IS STORED AT PREMISES CONTROLLED BY META PLATFORMS, INC. | Case No. 5:23-MJ-5013-MAS <br><br> **Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Special Agent Simon Butler, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook user ID that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID.

2. I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been employed in this capacity since 2021. I am currently assigned to the Louisville Division of the FBI and have primary investigative responsibility for white collar crimes and public corruption violations. I am trained and authorized to investigate the offenses alleged herein. Moreover, I am a federal law enforcement officer who is engaged in enforcing criminal laws, including 18 U.S.C. §§ 2314, and I am authorized by the Attorney General to request a search and seizure warrant. I

have been trained to investigate federal cases and provide witness testimony during a federal trial. Before becoming a Special Agent, I was employed by the Department of Defense in the United States Air Force and United States Marine Corps. As a federal law enforcement officer, I am authorized to execute search and seizure warrants issued under Rule 41 of the Federal Rules of Criminal Procedure.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 2314 have been committed by KYLE JOSEPH PRSKALO. There is also probable cause to search the information described in Attachment A for evidence of these crimes, as described in Attachment B.

## PROBABLE CAUSE

5. In February 2022, the FBI opened a case following a complaint from Sazerac Incorporated, owner of Buffalo Trace distillery in Frankfort, Kentucky, regarding Kyle Joseph Prskalo. The complaint alleged that Prskalo attempted to sell high value bourbon on Facebook and Instagram some of which was potentially stolen from a bourbon shipment between Buffalo Trace Distillery in Frankfort, Kentucky and whiskey broker Breakthru Beverage in Cicero, Illinois.

6. On November 23, 2021, a large order of high value bourbon was shipped from Buffalo Trace Distillery in Frankfort, Kentucky to Breakthru Beverage in Cicero, Illinois. 21 bottles of 12 year Pappy Van Winkle bourbon were discovered missing from the shipment when it arrived at Breakthru Beverage in Cicero, Illinois. Sazerac incurred a loss of approximately

2

$1,029.91 from the 21 stolen bottles of bourbon but each bottle could potentially be sold on the secondary market for approximately $800- $1000.

7.     On December 8, 2021, a concerned bourbon enthusiast reported an individual who was attempting to sell a large amount of high value bourbon, including 21 bottles of 12 year Pappy Van Winkle bourbon, on Facebook and Instagram for $120K. Sazerac hired a third-party investigator to look into the matter. The third-party investigator, a retired FBI Agent, determined the Facebook user selling the high value bourbon's true name was Kyle Prskalo and lived in Hobart, Indiana. The third-party investigator provided the FBI with the user's Facebook account URL (**www.facebook.com/profile.php?id=1527195497**) and screen shots reflecting posted photographs (Fig.1) related to the alleged stolen bourbon sale on Facebook. The screen shots provided to the FBI by the third-party investigator also showed interested buyers commenting on the photos and discussing prices of the sale with Prskalo (Fig. 2).



Fig. 1

3



Fig. 2

8. Based on the information provided by this private investigator, the FBI submitted legal process to Facebook for subscriber information and IP activity associated with Facebook user ID number 1527195497 (hereinafter, "Subject Account"). The information provided by Facebook in response confirmed the Subject Account was registered to Kyle Prskalo of Hobart, IN.

9. The photographs of Prskalo's Facebook post on December 8, 2021, provided to the FBI by the third-party investigator, included photographs depicting Buffalo Trace Distillery

shipping boxes with some of the labels visible (Fig. 3). The bottle Lot numbers were also visible on some of the labels. Those Lot numbers were matched with the Lot numbers of bottles sent to Breakthru Beverage on November 22, 2021. Although the stolen bourbon was sent to Breakthru Beverage in a separate shipment on November 23, 2021, the Lot numbers suggest Prskalo was associated with Breakthru Beverage and potentially acquired at least part of the bourbon in the photographs from a shipment to that company. The bourbon bottles from the November 22, 2021, shipment were not reported stolen but in my training and experience criminals are known to comingle illegally acquired products with legally acquired products in an attempt to thwart detection by law enforcement during resale.



Fig. 3

5

10. The information provided by Facebook in response to legal process also included IP addresses reflecting activity associated with Subject Account. This IP activity showed access to the Subject Account from multiple locations within 10 miles of Breakthru Beverage in Cicero, IL. The majority of the IP addresses used to log onto Subject Account came back to the Chicago metropolitan area.

11. On **August 31, 2022**, the FBI submitted legal process to JPMorgan Chase bank for records relating to Kyle Prskalo. Financial documents obtained from JPMorgan Chase bank showed Prskalo's bank account received a $110K payment from an individual on December 10, 2021 with "Pappy" in the reference line. On December 13, 2021, Prskalo received an additional $18,600 payment from a business owned by the same individual.

12. On **August 23, 2022**, the FBI submitted legal process to Facebook for all records not to include content of communications associated with Subject Account. Those records showed Prskalo was in communication with a group of four other individuals. The group's Facebook message activity spiked around the time of the bourbon shipment and the suspected secondary market bourbon sale (Fig. 4).



Fig. 4

13. On April 1, 2022, the FBI sent Facebook a request to preserve the content of Subject Account pursuant to 18 U.S.C. § 2703(f).

## **TECHNICAL TERMS**

14. Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

15. Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

7

16. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

17. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

18. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or

8

her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

19. Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

20. Facebook users can exchange private messages on Facebook with other users. Those messages are stored by Facebook unless deleted by the user. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a chat feature that allows users to send and receive instant messages through Facebook Messenger. These chat communications are stored in the chat history for the account. Facebook also has Video and Voice Calling features, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

21. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

22. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

23. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

24. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

25. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

26. In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

27. Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

28. Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may

communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

29. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook

11

"friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

30. Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## **INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

31. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## **CONCLUSION**

32. Based on the facts set forward in this affidavit, there is probable cause to search information associated with the Subject Account, as described in Attachment A, for evidence and instrumentalities of crimes, as described in Attachment B.

33. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Respectfully submitted,

/s/ Simon Butler

Simon Butler
Special Agent
Federal Bureau of Investigation

Transmitted by email and attested to by telephone in accordance with Fed. R. Crim. P. 4.1 on this 20 day of January, 2023.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE